UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| COMPASS MECHANICAL SERVICES, INC., | ) ) ) | Case No. 09 B 47131 |
| | ) | Hon. Eugene R. Wedoff |
| Debtor | | |

## FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

THIS MATTER coming on to be heard upon the Application (the "Application") of West Suburban Bank (hereafter referred to as the "Bank") for the entry of an order prohibiting the Debtor's use of the Bank's pre-petition and post-petition cash collateral and to Modify the Automatic Stay. The Debtor and the Bank having worked out an agreement whereby the Debtor will provide adequate protection to the Bank, the Court having examined the Application; and upon completion of a hearing pursuant to section 363 of the United States Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules");

THE DEBTOR AND THE BANK HEREBY STIPULATE AND AGREE AS FOLLOWS:

A. On December 14, 2009, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Petition"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of its assets and is authorized as Debtor-in-Possession to continue the operation and management of its business.

B. Pursuant to various notes and other loan documents between Debtor and West

Suburban Bank, an Illinois state chartered bank, the Debtor executed certain loan documents including but not limited to that certain Business Loan Agreement dated March 4, 2005 and May 4, 2006; a Commercial Security Agreement dated March 4, 2005 and May 4, 2005; Two Promissory Notes originally dated March 4, 2005 and March 15, 2007 along with subsequent renewals; and two UCC-1 Financing Statements dated March 28, 2005 and October 3, 2005. The Debtor's obligations under the Loan Documents shall hereafter be referred to collectively as the "Loans."

C. The Loans are secured by valid, perfected and first priority security interests ("Security Interests") in, among other things, the following assets, wherever located and whether then existing or owned or thereafter arising or acquired by the Debtor (collectively, the "Pre-Petition Collateral"):

(1) all inventory, chattel paper, accounts, contact rights, equipment, machinery, general intangibles and fixtures;

(2) all attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described above;

(3) all products and produce of any of the property described above;

(4) all accounts, contract rights, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described above;

(5) all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described above;

(6) all records and data relating to any of the property described above, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of the Debtor's right, title and interest in and to all computer software required

to utilize, create, maintain, and process any such records or data on electronic media; and

(7) all proceeds of the foregoing, including, without limitation, proceeds of insurance policies insuring the foregoing and all books and records with respect thereto.

The Pre-Petition Collateral is more fully described in the Loan Documents.

D. As of December 14, 2009, the outstanding balance on the Loans was $100,430.56 and $9,838.26, plus reasonable costs and attorney's fees. All amounts due Lender from Debtor prior to the commencement of this case, including the amounts set forth herein, plus accruing interest, attorney's fees, audit fees and other costs and expenses which Lender is entitled to recover pursuant to the Pre-Petition Documents shall be referred to as the "Pre-Petition Indebtedness."

E. A Creditors' Committee, as provided for under Section 1102 of the Bankruptcy Code, has not yet been appointed.

F. Substantially all of the Debtors assets are subject to the liens and Security Interests securing the Pre-Petition Indebtedness.

G. In order to meet its business needs, the Debtor has requested authority to use the cash collateral (as defined in section 363(a) of the Code) derived and arising from the Bank's pre-petition Collateral (the "Pre-Petition Cash Collateral") and from the Bank's Post-Petition Collateral (as defined hereafter). Pre-Petition Cash Collateral and Post-Petition Cash Collateral shall hereafter be referred to collectively as "Cash Collateral." As a result of such use, absent the protections contained in this order, the Bank's Cash Collateral may diminish in amount and value, entitling the Bank to adequate protection of its Pre-Petition Cash Collateral pursuant to section 363(e) of the Bankruptcy Code.

H. An immediate need exists for the Debtor to use Cash Collateral to preserve its

3

assets. Without such funds, the Debtor will not be able to pay its payroll, payroll expenses and operating expenses and otherwise preserve the assets of the estate. As a result, absent the entry of this order, the prospect of a successful reorganization may be impaired.

   I.   The value of the Pre-Petition Collateral is greater than the amount of the Pre-Petition Indebtedness.

   J.   This is a Final Application, intended to provide the Debtor with the use of cash collateral as is necessary to continue to operate the business through the end of the case or until some other triggering event occurs. The Debtor has provided of this final to the Bank, all of the Debtor's other secured creditors, the Debtor's twenty largest unsecured creditors and the United States Trustee, pursuant to Rule 4001(c) and (d) of the Bankruptcy Rules

   K.   The Bank has agreed to Debtor's use of Cash Collateral, but only under the terms and conditions set forth in this Order. The Debtor believes that, under the circumstances, the following terms and conditions are a fair and reasonable response to the Debtor's request for financial assistance. The Bank's agreement to consent to the limited use of its Cash Collateral as set forth herein and under the terms and conditions set forth herein is made in good faith and the terms of such agreement are fair and reasonable under the circumstances.

   L.   Entry of this Order will minimize disruption of the Debtor's ongoing affairs, will increase the possibility of a successful reorganization, and is in the best interest of the estate and its creditors.

   M.   The Bank and the Debtor collectively acknowledge, confirm and ratify the Pre-Petition Documents, the Pre-Petition Indebtedness and the validity, perfection and first priority of the Bank's Security Interests in the Pre-Petition Collateral, and deny and waive the existence of any defenses, claims, offsets, counterclaims or any other diminution of any type relating

thereto.

The Court being otherwise fully advised in the premises;

**IT IS HEREBY ORDERED, EFFECTIVE IMMEDIATELY THAT:**

1. Debtor shall use or consume Cash Collateral only to the extent provided in this Order.

A. On the first day of each month, the Debtor shall transmit the Bank a monthly line item budget with the proposed (i) monthly cash flow projections and (ii) a line item list of all expenses which the Debtor expects to incur. Debtor shall also transmit to the Bank a report of all monies received by the Debtor including checks, wire transfers and charge card receipts. The Bank, within twenty four hours of receipt, will allow or disallow each line item request. Debtor is only authorized to use cash collateral for each line item approved by the Bank and only for said monthly period;

B. If the Debtor wishes to expend more than 10% in excess of any line item entry stated in the budget for any month, it must seek prior written approval of the Bank or prior authorization from the Court;

C. The Debtor is directed to provide the Bank on a monthly basis with:

(i) List of purchase orders received by the debtor during the previous month;

(ii) Monthly copies of the Debtor's deposits or other funds received and placed in any financial account maintained by the Debtor;

(iii) Copies of the Debtor's accounts receivable listing on a monthly basis

(iv) Copies of the post-petition check register monthly; and

(v) Monthly report of actual money spent compared to budgeted line item request for previous week.

2.  As adequate protection to the Bank for the use of its Cash Collateral authorized herein, the Bank is hereby granted a replacement lien in the Post-Petition Collateral to the extent of and with an equal priority as its pre-petition liens and security interests. As further adequate protection, the Debtor shall monthly pay the amounts stated in the pre-petition notes outlined herein.

3.  Post-Petition Collateral means all of the property of the Debtor wherever located and whether now existing or hereafter arising or acquired by the Debtor, including without limitation the following:

(A) accounts, chattel paper, contract rights, any and all rights to payment, instruments, Documents and general intangibles (including without limitation, all trade styles, trade names, patents and other intellectual property rights) (sometimes hereinafter individually and collectively referred to as "Accounts"), and all goods whose sale, lease or other disposition by the Debtor has given rise to Accounts and have been returned to or repossessed or stopped in transit by the Debtor;

(B) Inventory, including, without limitation, all of the Debtor's now owned or hereafter acquired goods and other personal property furnished under any contract of service or intended for sale or lease, including, without limitation, all raw materials, work in process, finished goods and materials and supplies of any kind, nature or description which are used or consumed in the Debtor's business or are or might be used in connection with the manufacture, packing, shipping, advertising, selling or finishing of such goods, the Debtor and by the Debtor, merchandise and other personal property, all returned and repossessed goods now, or at any time or times hereafter, in the possession or under the control of the Debtor or the Bank, and all Documents of title or Documents representing the same ("Inventory");

6

(C)   All other personal property, including but not limited to equipment, machinery, vehicles and fixtures, together with all accessions thereto ("Equipment"), and all of the Debtor's interest as either lessor or lessee pursuant to leases for or of Equipment;

(D)   All buildings and other improvements and all leasehold interests in and purchase options in real property;

(E)   Cash, deposits, deposit accounts, monies, reserves and property now or at any time or times hereafter in the possession or under the control of the Debtor, the Bank or a bailee of any of them;

(F)   All proceeds of the foregoing, including, without limitation, proceeds of insurance policies insuring the foregoing and all books and records with respect thereto; and

(G)   All of the Debtor's other real and personal property.

4.   The terms of the Pre-Petition Documents are hereby ratified and approved, and shall continue in full force and effect. The liens and Security Interests granted to the Bank by the Debtor shall constitute first, paramount, perfected and valid liens upon and Security Interests in the Pre-Petition Collateral and are not and shall not be subject to any claims, set-offs or defenses by the Debtor.

5.   To further evidence the Debtor's Security Interests in and liens upon the Post-Petition Collateral, the Debtor is authorized and directed to (but at the Bank's option need not) execute and deliver to the Bank all documents as the Bank may reasonably require (collectively, the "Post-Petition Documents"), in form and substance satisfactory to the Bank.

6.   Until and unless the Post-Petition Documents are executed, and terms and conditions of the Pre-Petition Documents shall remain in full force and effect, except to the extent otherwise provided herein or modified hereby. In the event the terms of the Pre-Petition

Documents are inconsistent with the Post-Petition Documents, the Post-Petition Documents shall govern. The liens, Security Interests and priorities granted to the Bank herein shall be as valid, paramount and perfected as they were pre-petition, irrespective of whether any or all of the Post-Petition Documents are executed or filed with any Recorder of Deeds, Secretary of State or any other governmental unit where security documents are ordinarily filed or recorded.

7. In accepting the monthly budgets referred to in Paragraph 1 of this Order and by taking any other actions pursuant to this Order, the Bank shall not have any liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" with respect to the operation or management of the Debtor.

8. If the Bank obtains relief from the automatic stay, without further order of Court, the Debtor shall and the Bank may instruct all account debtors of existing and future accounts (whether included in the Pre-Petition Collateral or Post-Petition Collateral) to make payments directly to the Bank or such lock box or depository account as the Bank may designate. Such proceeds shall be available for application by the Bank against the indebtedness of the Debtor and the Debtor to the Bank as provided herein. In the event the Debtor receives any payments or proceeds from the sale or disposition of inventory or as proceeds of accounts or other Pre-Petition Collateral or Post-Petition Collateral, the Debtor and its officers and agents shall immediately remit such payments or proceeds to the Bank. The Bank shall, upon written request of any party in interest, submit monthly reports of any accounts collected pursuant to this paragraph to the Debtor.

9. Notwithstanding anything to the contrary, with or without cause, this Order and the Debtor's right to use Cash Collateral hereunder may be terminated at any time upon five (5) days notice, if by the Bank, to Debtor c/o its counsel, Forrest Ingram, 79 West Monroe Street,

Suite 900, Chicago, Illinois 60603, and if by Debtor, to the Bank, c/o its counsel, Gina B. Krol, Cohen and Krol, 105 W. Madison Street, Suite 1100, Chicago, Illinois 60602. Such notice shall be delivered by hand delivery or overnight mail. Upon termination by either party, all outstanding indebtedness to the Bank, including all accrued and accruing interest, costs and expenses, including attorneys' fees, shall then be immediately due and payable.

10. The signature of Michael Wojciechowski or any other persons authorized by corporate resolution shall bind the Debtor with respect to any instrument or document executed or any other action taken pursuant to this Order.

11. The Debtor agrees and is hereby required to deliver to the Bank such financial and other information concerning the business and affairs of the Debtor as is required pursuant to the Pre-Petition Documents and as Lender shall request from time to time.

12. This Order is further subject to the delivery to the Bank of evidence, satisfactory to Bank's counsel, that the Pre-Petition Collateral and the Post-Petition Collateral are insured for the full replacement value thereof and that Lender is named as loss payee and/or as an additional insured on all insurance policies.

13. The provisions of this Order shall be binding upon and inure to the benefit of the Bank, the Debtor and their respective successors and assigns.

14. Nothing contained herein shall be deemed to be a waiver by the Bank of any default under the Pre-Petition Documents, which occurred prior to or will occur after the date of this Order.

15. The Bank's agreement to consent to the limited use of its Cash Collateral as set forth herein and under the terms and conditions set forth herein is made in good faith.

16. Nothing contained herein shall: (i) affect or impair the Bank's right to seek

additional adequate protection of its interests in the Pre-Petition Collateral or Post-Petition Collateral; or (ii) be deemed to constitute a commitment by the Bank to make advances to the Debtor or to provide financing to the Debtor.

17. This order shall remain in full force and effect through the end of this case or until some other triggering event occurs.

18. This matter is a "core proceeding" and this Order is a final order, within the mean of 28 U.S.C. §157.

Dated as of February 17, 2010.

ENTER:

_____
BANKRUPTCY JUDGE

Agreed and Approved as
to form and substance:

Compass Mechanical Services, Inc.

By: _____
Its Attorney

Prepared by:
Gina B. Krol
Cohen & Krol
105 West Madison Street
Suite 1100
Chicago, Illinois 60602
312/368-0300 - Tel
312/368-4559 – Fax

10